| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>David N. Crapo, Esq.<br>GIBBONS P.C.<br>One Gateway Center<br>Newark, New Jersey 07102<br>Telephone: (973) 596-4500<br>Facsimile: (973) 596-4545<br>E-mail: dcrapo@gibbonslaw.com<br>*Local Counsel for the Debtor* | |
| **In re:**<br><br>**AMG INTERNATIONAL, INC.,**<br><br>            **Debtor.** | Chapter 11<br><br>Case No. 17-25816 (JKS) |
| **AMG INTERNATIONAL, INC.,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**ELECTRO MECHANICAL INDUSTRIES (PTE) LTD.,**<br><br>      **Defendant.** | Adv. Proc. No. 17-01676 (JKS)<br><br><br><br><br><br>**Objection Deadline: January 16, 2018 at 4:00 p.m.**<br>**Hearing Date: January 23, 2018 at 10:00 a.m.** |

## PLAINTIFF/COUNTER-DEFENDANT'S
## MOTION TO DISMISS COUNTS II, III, AND IV
## OF THE COUNTERCLAIM

AMG INTERNATIONAL, INC., the Plaintiff and Counter-Defendant ("**Plaintiff**"), by and through its undersigned counsel, files this *Motion to Dismiss Counts II, III, and IV of the Counterclaim*, and respectfully requests that the Court dismiss Counts II, III, and IV of the Counterclaim, with prejudice, and in support thereof, states as follows:

**PRELIMINARY STATEMENT**

The above-styled adversary proceeding was commenced by the Plaintiff against Electro Mechanical Industries, LTD (the "**Defendant**") primarily in an effort to obtain the turnover of molds in the possession of the Defendant and to avoid and recover certain preferential transfers. Possession of the molds in question, which are owned by the Plaintiff, was provided to the Defendant for purposes of manufacturing product for sale to the Plaintiff. The Court recently granted the Plaintiff's request for a temporary restraining order and, pursuant to that order, the molds are being delivered to the Plaintiff's designated agent.

On November 29, 2017, the Defendant filed its *Answer, Affirmative Defenses and Counterclaims* in which the Defendant asserts various claims against the Plaintiff (collectively, the "**Counterclaims**"). The Counterclaims include: (a) Count I – a declaration as to ownership of certain molds; (b) Count II – a constructive trust over amounts paid to the Plaintiff by the Plaintiff's customers; (c) Count III – a declaration that the Defendant is entitled to pursue the Plaintiff's customers directly for amounts owed by the Plaintiff; and (d) Count IV – allowance of an administrative expense claim under 11 U.S.C. § 503(b)(9).

Other than Count I, the Plaintiff respectfully submits that all remaining counts should be dismissed pursuant to Fed.R.Bankr.P. 7012(b)(6) for failure to state causes of action upon which relief may be granted.

**LEGAL STANDARD:**

1.  In order to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), made applicable to these proceedings pursuant to Fed.R.Bankr.P 7012(b)(6), the Defendant must allege facts that, if "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). The plausibility determination is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court must be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. At 663.

2. "Dismissal of a complaint under Rule 12(b)(6) is only appropriate if it can be said that, under a plausible reading of the complaint, the plaintiff is not entitled to relief." *Dragotta v. W. View Sav. Bank,* 2010 U.S. App. LEXIS 20140, at *4 (3d Cir. September 28, 2010).

3. Based on the foregoing standards and, for the reasons stated herein, a review of the allegations and applicable law support dismissal of Counts II, III, and IV of the Counterclaims.

## LEGAL ARGUMENTS AND FACTS IN SUPPORT

### A.    Count II – Constructive Trust

4. The Defendant alleges that it is entitled to a constructive trust against amounts paid to the Plaintiff by its customers in connection with drop shipped goods.

5. By way of background, the drop shipment of goods was a practice used in some instances by the Plaintiff and Defendant. In a typical transaction involving the drop shipment of goods, the Plaintiff receives an order from its customer for the purchase of goods. The Plaintiff then places an order with the Defendant, but requests that the goods be shipped directly to the Plaintiff's customer. The Plaintiff invoices its customer, who then pays the Plaintiff, while the Defendant invoices the Plaintiff, who is then obligated to pay the Defendant. At no point does the Defendant either invoice or expect payment from the Plaintiff's customer. The Plaintiff's customer is never obligated, contractually or otherwise, for payment to the Defendant.

18749885  0929080
2583455.2  114753-95692

6. As alleged by the Defendant, the Defendant "shipped approximately $69,615.30 in goods to Plaintiff's customers on account of ***orders made . . . by Plaintiff.*** A full list of the orders are set forth in the . . . attached . . . Exhibit B . . . ." *See Counterclaims, p.10,¶4 (*emphasis added). The goods in question were ordered by the Plaintiff prior to commencing this Chapter 11 proceeding and, therefore, the Defendant's claim arising from the sale of goods to the Plaintiff is a pre-petition claim.

7. Nevertheless, the Defendant claims entitlement to a constructive trust over amounts received by the Plaintiff from its customers in connection with drop shipped goods.

8. "In New Jersey, a two-pronged test is utilized to determine whether a constructive trust is warranted in a given case." *Jurista v. Amerinox Processing, Inc.*, 2013 U.S. Dist. LEXIS 44057, at *135 (D. N.J. March 28, 2013) (quoting *Flanigan V. Munson*, 175 N.J. 597, 608 (N.J. 2003). "First, the defendant must have committed a 'wrongful act'". *Id.* "Second, that wrongful act must have resulted in a transfer or diversion of property that unjustly enriches its recipient." *Id.* "The New Jersey Supreme Court [. . .] has expressly cautioned that 'a constructive trust is a powerful tool to be used only when the equities in a given case clearly warrant it.'" *Id.* (quoting *In re: Allen,* 2012 U.S. Bankr. LEXIS 874, at * 43). "'Thus, the suitability of imposing a **<u>constructive trust</u>** must be established by . . . "clear, definite, unequivocal and satisfactory evidence."'" *Id.* at *135-136 (quoting *In re: Allen,* 2012 U.S. Bankr. LEXIS 874, at * 43-44) (emphasis in original).

9. In light of the foregoing, the Plaintiff must have engaged in some wrongful conduct. However, the Defendant cannot reasonably suggest, nor do the Counterclaims contain, any allegation of wrongful conduct whatsoever on behalf of the Plaintiff. Rather, the Defendant

18749885  0929080
2583455.2  114753-95692

alleges that it is entitled to a constructive trust simply due to the Plaintiff's failure to pay for the goods.

10. Moreover, to impose a constructive trust against property of the estate would be a direct violation of the automatic stay in effect pursuant to 11 U.S.C. § 362(a), since (a) a constructive trust would result in the Defendant pursuing collection of a pre-petition claim against the Plaintiff, and (b) the constructive trust would be against property of the estate.

11. While it may be true that the Defendant holds a pre-petition claim against the Plaintiff, this alone does not justify the imposition of a constructive trust against property of the estate in the absence of fraudulent or other wrongful conduct by the Plaintiff. Indeed, if this were the case, then any creditor owed for goods sold to a debtor would have a claim for a constructive trust against property of the debtor's estate. As the Defendant cannot possibly sustain a claim for a constructive trust against any amounts paid to the Plaintiff, the Defendant's request for a constructive trust must be dismissed.

12. Section 362(a) of the Bankruptcy Code operates as a stay of (a) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" (s*ee* 11 U.S.C. § 362(a)(3)); and (b) "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" (s*ee* 11 U.S.C. § 362(a)(6)).

13. The Defendant acknowledges that goods were shipped to the Plaintiff's customers prior to the petition date of August 3, 2017. Consequently, the claim against the Plaintiff arose pre-petition and, therefore, the Defendant's efforts to obtain a constructive trust against property of the estate represent acts in violation of the automatic stay.

18749885  0929080
2583455.2  114753-95692

14. Finally, a constructive trust in favor of the Defendant would be contrary to the distribution priorities set forth in the Bankruptcy Code. More specifically, the Defendant – a holder of a pre-petition claim – would have this Court impose a constructive trust, thus resulting in the Defendant receiving a treatment more favorable than otherwise afforded to unsecured creditors under the Bankruptcy Code.

15. This point was addressed in the *Jurista* decision wherein the court reasoned, "[e]ssentially, '[b]ecause the constructive trust doctrine can wreak havoc with the priority system ordained in the Bankruptcy Code, bankruptcy courts are generally reluctant to "impose constructive trusts without a substantial reason to do so."'" *Jurista,* 2013 U.S. Dist. LEXIS 44057, at *138 (D. N.J. March 28, 2013) (quoting *Neochem Corp. v. Behring Int'l Ins.,* 61 B.R. N.D. Tex. 1986). Here, in this case, there is no reason, let alone a substantial reason, in support of imposing a constructive trust.

16. Based on the foregoing, Count II of the Counterclaim should be dismissed for failure to state a cause of action upon which relief may be granted.

**B.    Count III – Declaration That Defendant May Pursue Plaintiff's Customers**

17. In Count III of the Counterclaims, as an "alternative" form of relief, the Defendant simply requests a "declaration" form the Court that the Defendant may pursue recovery directly from the Plaintiff's customers.

18. However, as acknowledged by the Defendant, the Plaintiff placed orders directly with the Defendant, who would then drop ship the goods to the Plaintiff's customers. The Defendant invoiced the Plaintiff - as opposed to the Plaintiff's customers - and expected payment from the Plaintiff. This is evidenced, in part, by the proof of claim filed by the Defendant in this Chapter 11 proceeding.

19. In the event the Plaintiff's customer has already paid the Plaintiff for the goods, the Defendant suggests that it should be entitled to pursue recovery from the Plaintiff's customer, thus resulting in the Plaintiff's customer paying twice, certainly not a plausible or reasonable result.

20. But, even assuming, *arguendo,* that the Plaintiff's customers have not yet paid for the drop shipped goods, the obligation owed by the Plaintiff's customer is an account receivable, which is property of the estate within the meaning of section 541(a) of the Bankruptcy Code. Thus, any acts to collect from the Plaintiff's customers would violate the automatic stay, since such acts "to obtain possession of property of the estate", or "to exercise control over property of the estate", i.e., account receivables, would be in violation of section 362(a)(3) of the Bankruptcy Code.

21. Finally, although the Defendant requests declaratory relief in Count III of the Counterclaim, the Defendant alleges a right to pursue the Plaintiff's customers purportedly to avoid the customers from being "unjustly enriched."

22. It has been held that, "'New Jersey law does not recognize unjust enrichment as an independent tort cause of action. Thus, where a plaintiff asserts an unjust enrichment cause of action along with [other] tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the defendant, the unjust enrichment claim should be dismissed.'" *Jurista v. Amerinox Processing, Inc.*, 2013 U.S. Dist. LEXIS 44057, at *81 (D.N.J. March 28, 2013 (quoting *Kelsey v. Paparozzi,* 2007 N.J. Super. Unpub. LEXIS 524, at *4-5 (N.J. Super. 2007).

23. Ordinarily, "[a]n unjust enrichment claim consists of three elements: (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would

18749885  0929080
2583455.2  114753-95692

make it unjust for the defendant to retain the benefit without paying for it." *Jurista,* 2013 U.S. Dist. LEXIS 44057, at *81-82 (D. N.J. March 28, 2013). "The doctrine further requires a plaintiff to show that it 'expected remuneration from [the] defendant at the time it performed or conferred a benefit on [the] defendant [.]'" *Id.* at *82 (quoting *Mason v. Coca-Cola Co.,* No.Civ.A. 09-0220, 2010 U.S. Dist. LEXIS 65107, at *22 (D.N.J. June 30, 2010)).

24. Here, the Defendant had no legitimate or reasonable expectation of payment from the Plaintiff's customers. Either the Plaintiff's customers (a) paid the Plaintiff, or (b) owe the Plaintiff, in which case the debt amounts to an account receivable, which is property of the Plaintiff's estate within the meaning of section 541(a); thus, any efforts by the Defendant to pursue recovery from the Plaintiff's customers would amount to an act to recover against, or to assert control over, an asset of the bankruptcy estate and result in a violation of the automatic stay.

25. Based on the foregoing, Count III of the Counterclaim should be dismissed for failure to state a cause of action upon which relief may be granted.

C.    **Count IV – 503(b)(9)**

26. In Count IV of the Counterclaim, the Defendant seeks allowance of an administrative claim under section 503(b)(9) of the Bankruptcy Code.

27. Section 503(b)(9) affords an administrative expense claim equal to the "value of any goods *received by the debtor* within 20 days before the date of commencement of a case under this title . . . ." 11 U.S.C. § 503(b)(9).

28. In support of Count IV, the Defendant claims that the *Plaintiff* "received at least $45,274.37 in the value of goods sold by EMI [Defendant] to Plaintiff" during the twenty (20) days prior to the Petition Date. *See Counterclaim*, p.11, ¶ 12.

18749885 0929080
2583455.2 114753-95692

29. However, as alleged and conceded by the Defendant, the goods in question were "drop shipped" to the Plaintiff's customers. As a result, the Plaintiff submits that it had not received the goods for purposes of section 503(b)(9).

30. The Third Circuit Court of Appeals has held that, "[t]here is no definition of 'receipt' in the Bankruptcy Code, but that U.C.C. § 2-103(1)(c) defines receipt of goods as 'taking physical possession of them.'" *In re: Marin Motor Oil, Inc.*, 1984 U.S. App. LEXIS 20199, *15 (3rd Cir. March 9, 1984).

31. In the *Marin* case, the Third Circuit concluded that "receipt" occurs upon taking physical possession of the goods, at least in the context of reclamation demands under section 546(c) of the Bankruptcy Code.

32. Although the *Marin* case dealt with reclamation demands, the Third Circuit Court of Appeals, in *In re World Imports, Ltd.*, 862 F.3d 338 (3rd Cir. 2017), recently considered "receipt" in the context of section 503(b)(9) of the Bankruptcy Code.

33. In *World Imports,* goods sold to a debtor were loaded onto a common carrier in China for shipment to the debtor. The Third Circuit distinguished between "delivery" and "actual receipt" of goods. Although the goods were not drop shipped, the Third Circuit concluded that "goods are 'received' when the debtor or its agent takes physical possession of them." *Id.* at 342. Thus, the Third Circuit concluded that actual physical possession is required for purposes of "receipt" in considering a request under section 503(b)(9). The Third Circuit, in holding that placing goods with a common carrier was not tantamount to the debtor's receipt of goods, further concluded that "common carriers are not agents." *Id.* at 344.

34. In the case of *In re: SRC Liquidation, LLC*, 537 B.R. 537 (Bankr. D. Del. 2017), a case decided just months before the *World Imports* decision, the United States Bankruptcy Court

9

for the District of Delaware considered a request for allowance of an administrative claim under section 503(b)(9) in the context of the drop shipment of goods.

35. In *SRC*, goods ordered by the debtor were placed with a common carrier for direct shipment to the debtor's customer. The seller argued that the debtor had "constructive receipt" of the goods, which it maintained was sufficient for purposes of establishing a viable claim under section 503(b)(9).

36. The *SRC* court rejected the seller's argument and, in so holding, determined that the debtor had not "received" the goods in question, since physical possession, not the passing of title, is the appropriate determinative factor for purposes of section 503(b)(9). *See id.* at 542. The *SRC* court even went so far as to hold that "constructive receipt" is insufficient for section 503(b)(9).

37. Finally, the Defendant has failed to include any exhibits or other information in support of the allegation that the goods in question were "received" by the Plaintiff within twenty (20) days prior to the Petition Date. Therefore, the Defendant does not sufficiently allege facts in support of Count IV.

38. Based on the foregoing, Count IV of the Counterclaims should be dismissed for failure to state a cause of action upon which relief may be granted.

**WHEREFORE,** the Plaintiff respectfully requests that this Court grant this Motion, and enter an order dismissing Counts II, III, and IV of the Counterclaims, with prejudice, for failure to state causes of action upon which relief may be granted, as well as granting such other and further relief that the Court may deem just and proper.

18749885  0929080
2583455.2  114753-95692

Dated: December 29, 2017  **GIBBONS P.C.**
Newark, New Jersey

                By:   */s/ David N. Crapo*
                     David N. Crapo
                     One Gateway Center
                     Newark, NJ 07102-5310
                     Tel.  973-596-4500
                     Fax.  973-596-0545
                     E-mail:  dcrapo@gibbonslaw.com

*Local Counsel for the Debtor*

18749885  0929080
2583455.2  114753-95692